## Frederick Tudor *versus* Ichabod Macomber *et al.*

In adjusting a general average in the case of a jettison, if the vessel arrives at the port of destination, the value of the goods thrown overboard is the net price for which they might have been sold at that port.

But if the vessel returns to the port of departure or a neighbouring port, the actual *price of replacing* the goods thrown overboard, or if that cannot be done, the cost price, including shipping charges, is the rule by which the value of the goods jettisoned should be ascertained.

As a general rule, the valuation of the cargo in the bill of lading is conclusive between the owner of the ship and the owner of the cargo, in the adjustment of a general average at the home port.

Where the cargo jettisoned consisted of ice, which had no market value at the port of departure, but in the bill of lading (there being no invoice) was valued at a certain sum, and the vessel returned to her port of departure, it was *held*, that in adjusting the general average at that port the sum in the bill of lading was to be taken to be the value as between the shipper and the ship-owner; and that as no freight was earned, the contribution was to be made by the ship and cargo alone.

Assumpsit to recover contribution of the defendants, the owners of the schooner Wave, as a general average for the loss of a cargo of ice shipped on board the schooner by the plaintiff, to be carried from Boston to Charleston, S. C., on freight.

On the trial, before *Wilde* J., it was proved, that on the day after the schooner left Boston she met with tempestuous weather, which continued until she was driven on shore at Chatham in the county of Barnstable, and that for the purpose of lightening the vessel and saving her from destruction it was found necessary to throw the ice overboard ; which was done accordingly.

The defendant's counsel contended, that the ice was of little or no value, and the expense of lading and unlading i

Tudor<br>v.<br>Macomber.

for the purpose of repairing the vessel would much exceed its value at the port of Chatham or at the port of lading; and the judge was requested to instruct the jury, that as the voyage was in fact broken up at Chatham, the plaintiff's claim should be adjusted upon the value of the ice at that port or at the port of lading.

But the judge instructed the jury, that the master had no right to break up the voyage to the prejudice of the plaintiff, against his consent, if they should be of opinion that the vessel might have been repaired in a reasonable time, so as to proceed on the voyage, or if not, if they should find, from the evidence, that another vessel might have been procured at the port of Chatham or any other port within a reasonable distance; and that in either case the master would have been bound to carry the cargo to its place of destination, unless the expenses of lading and unlading, freight, and all other expenses by law chargeable to the plaintiff, would by a just computation equal or exceed the value of the ice if it had been carried to Charleston. In making this computation the jury were instructed to estimate what would have been the expenses of bringing in the vessel and unlading and lading the cargo, for the purpose of making repairs, and that these expenses would be a general average on ship, freight and cargo, the cargo to be estimated at its value at the port of destination; and if the value of the ice should be found to exceed the amount of the average chargeable on the cargo and the freight &c., to return a verdict for the plaintiff for such excess, which would be the amount of the plaintiff's damages if the ice had been thrown overboard unnecessarily; and it was agreed that the verdict should be subject to be reduced by assessors, on the principles of general average.

The defendants also contended, that the ice could not be estimated for any purpose, above the sum of $ 500, at which it was valued in the bill of lading; but the jury were instructed as above stated.

The jury returned a verdict for the plaintiff for $ 372·25, founded on the value of the ice at Charleston.

If any of these instructions was wrong, a new trial was to be granted.

Tudor
*v.*
Macomber.

*March 29th.*

*D. A. Simmons* and *Gay* for the defendants. The facts do not present a case for a general average. The ice was injured and would have melted, if it had not been thrown overboard; and it was not thrown overboard to enable the vessel to pursue her voyage, for there was no other cargo. Stevens on Average, 63.

In adjusting a general average, the value of the ice at Boston, if it was sound, or at Chatham, if it was damaged, should have been taken, and not the value at Charleston, as the vessel did not arrive there. Benecke, 288, 325; Stevens, 47 to 49; Phillips on Ins. 356, 357, 365.; Abbott on Shipping, 358; Hughes on Ins. 295; *Douglas* v. *Moody*, 9 Mass. R. 554.

The valuation of the ice in the bill of lading is conclusive upon the parties. It is more than the value at the port of departure and less than the value at the port of destination, and was undoubtedly inserted in order to fix the contributory amount in case there should be a jettison.

*Willard* for the plaintiff. To the point that this was a case for a general average, notwithstanding the whole cargo was thrown overboard, he cited Stevens, 6, 9, 52, 65; *The Gratitudine*, 3 Rob. Adm. R. 258, 260.

The value of the ice at Chatham, even if a port in this State could be considered an intermediate port, is not to be taken as the basis of the calculation of the contributory interest, but the value at the port of lading or port of destination; and this last value is the rule applicable to the greater number of cases. *Simonds* v. *White*, 2 Barn. & Cress. 805; *Lewis* v. *Williams*, 1 Hall, (N. York) 430; Benecke, 296, 299, 325 to 327; Phillips on Ins. 356, 357, 362, 365; Stevens, 49, 50, 57; *Leavenworth* v. *Delafield*, 1 Caines's R. 574; *Douglas* v. *Moody*, 9 Mass. R. 554; *Spafford* v. *Dodge*, 14 Mass. R. 79, 80; Pothier on Marit. Contr. (by Cushing) 74. The value in the bill of lading is not conclusive as between the shipper and ship-owner. Abbott, 357; *Welles* v. *Gray*, 10 Mass. R. 42; *Simonds* v. *White*, 2 Barn. & Cress. 805; Phillips, 365; *Barrett* v. *Rogers*, 7 Mass. R. 297; *Maryland Ins. Co.* v. *Ruden's Administrator*, 6 Cranch, 338 *Bates* v. *Todd*, 2 Moody & Malk. 106.

Putnam J. delivered the opinion of the Court. The jury have established the facts, that there was a necessity to make the jettison, and that the vessel was saved thereby ; and the question for the Court is, whether the value of the cargo at Boston, or the value at Charleston, should be taken as the rule in the computation of the general average.

Tudor
v.
Macomber.
*April* 1st.

If (as has been stated and not denied at the argument) the ice, which constituted the whole cargo, could have been landed in Chatham, the port of distress, in good order, and the vessel could have been repaired, in a reasonable time, at an expense less than fifty per cent. on her value, or if not, if another vessel could have been procured in a reasonable time to transport the cargo, it would have been the duty of the master to have proceeded upon and finished the voyage.

If the cargo could have been saved instead of being thrown away, it would not make a case of general average. It would seem to be very clear in such case, that if it were necessary to unlade it, there was no necessity to sacrifice it for the relief of the vessel. This would be very obvious if the cargo were a valuable one. If, for example, it had been a cargo of coffee, and could have been landed safely and reladen after the vessel should have been repaired, there would be no reason to claim a contribution for the value of the cargo, but only for the expenses of unloading and reloading, and for any damages incidentally happening during these operations. But the principle is the same in both cases.

If there were a necessity to throw over the cargo for the safety of the vessel, and it were partially damaged from the perils of the sea independently of the jettison, such partial damage should be deducted from the sound value. For such partial loss the owner might have a claim upon the underwriter, or he must bear it as being his own insurer. We understand, rather from the admission of the parties at the argument than from the report of the case, that the ice was greatly injured by the salt water, before it was thrown overboard ; and the amount of that damage must be ascertained and deducted from the full value of it in good condition.

But to return to the question, how shall the value of this cargo be calculated ? According to the price at the port of

Tudor
v.
Macomber.

destination, deducting freight &c., or that at the port of load-ing? Certainly one or the other, and not according to the price at the port of distress, where it could not be sold and was not probably of any value at all. If the price at the port of destination is to be taken, then the freight should contrib-ute to the general average loss. If the voyage is broken up, and the vessel returns to the port of loading, then no freight would be earned, and the contribution would be between ves-sel and cargo only.

The old rule, that where more than half of the voyage had been performed, the value of the jettison should be the price of goods at the port of destination, and where less than half had been performed, the value at the port of departure should be taken, has been exploded. The rule may be seen in Molloy, *bk.* 2, *c.* 6, § 4. It is of very difficult and uncer-tain application. If the ship arrives at the port of destination, it is of no consequence to the owner of the goods, whether they were thrown overboard in the first or the last part of the voyage. Such an inquiry would be as useless as it would be difficult to solve.

We think that if the vessel arrives at the port of destina-tion, the value should be the net price for which the cargo might have been sold there. Benecke, 286 *et seq.*; Abbott, (4th Amer. edit.) 357. That is undoubtedly the rule in Great Britain, France, Spain and Prussia. Benecke, 288. But, says the same author, should a jettison take place so near the port of departure, that the vessel returns to the same or to a neighbouring port, the actual price of replacing the goods thrown overboard should be allowed; or if that could not be done, the *cost price*, including shipping charges and premium of insurance, should be the rule by which the value of the goods jettisoned should be ascertained. Ibid.

We think this is the sound rule in such case.

In Westk. 29, *Average*, § 11, it is said, the valuation in the *policy* is not to conclude the parties in the settlement of a general average, which should be calculated upon the true value of the ship, goods or freight; it is otherwise in case of a total loss. But this does not interfere with the rule we adopt in taking the *invoice* value as the true value, including

all costs and charges. If the policy should contain a less valuation than the invoice, it should be opened, just as it would be in respect to the ship, to ascertain the true or invoice value.

But this cargo had no market price here. The value consisted in the expense of cutting the ice from the pond and transporting it to the vessel, loading &c., which in the bill of lading is set down at a certain price. As a general rule, this valuation of the cargo, without fraud, would be conclusive between the owner of the cargo and the owner of the ship, in the adjustment of the general average at the home port.

If the goods had arrived at the port of destination in safety, the owner would have realized the price there. He suffers just so much loss as was caused by the jettison, which could be there accurately estimated. And the freight would then be brought into the contribution. But where, as in the case at bar, the voyage is broken up near the port of departure, and the vessel has not adopted an intermediate port as and for the port of destination, but has returned home, and the freight has not been saved by the jettison, the contribution to the general average loss should be between the ship and the cargo, upon the assumed value of the cargo at the port of departure. This we think furnishes an exact rule ; whereas the adopting of the value at the port of destination would in such a case be uncertain, depending upon matters of opinion instead of matter of certainty.

A new trial is granted, which will proceed upon the principles before stated. The jury will find whether or not there was a necessity for the destruction of the plaintiff's property by jettison, and if so, they will take the value contained in the bill of lading (there being no invoice) as the *cost price* of the property on board, inclusive of all charges.

*New trial granted.*